IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AARON CARLOS BELTRAN, and MAYRA LILIANA MAURICIO ROSALES,<br><br>               Plaintiffs,<br><br>     v.<br><br>LOREN K. MILLER, ALEJANDRO MAYORKAS, UR MENDOZA JADDOU, ANTONY J. BLINKEN, PHILLIP SLATTERY, and RICHARD C. VISEK,<br><br>               Defendants. | 4:23CV3053<br><br>**AMENDED MEMORANDUM AND ORDER** |

    In this case, plaintiffs Aaron Carlos Beltran ("Beltran") and his wife Mayra Liliana Mauricio Rosales ("Rosales" and together, the "plaintiffs") seek relief from a long-delayed process toward lawful family unification. They allege that various federal officials (collectively, the "defendants")[1] charged with carrying out the different steps of processing and granting immigrant visa applications, as well as overseeing and delegating the use of that authority, have unlawfully withheld any progress on this process for over three years. These mounting delays have caused the plaintiffs, in addition to much frustration, unquestionable emotional and financial distress.

    Now before the Court is the defendants' Motion to Dismiss (Filing No. 21) the plaintiffs' complaint (Filing No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(1)

---

[1]The defendants with the United States Citizenship and Immigration Service ("USCIS") include Director Ur Mendoza Jaddou and Director of the Nebraska Service Center Loren Miller. The defendants from the Department of State include Secretary of State Antony Blinken, Director of the National Visa Center Phillip Slattery, and Acting Legal Adviser Richard Visek. Alejandro Mayorkas is the Secretary of the Department of Homeland Security. The plaintiffs bring this action against the defendants in their official capacities only.

and (6). After thorough and careful review, the Court finds dismissal of this action appropriate for want of subject-matter jurisdiction.

I.      BACKGROUND

This matter concerns the path to lawful residency for a spouse or close relative of a United States citizen who is or has been unlawfully present in the United States.[2] "Under the Immigration and Nationality Act [("INA")], 8 U.S.C. § 1101 *et seq.*, citizens and lawful permanent residents [] of the United States may petition for certain family members—spouses, siblings, and children of various ages—to obtain immigrant visas." *Scialabba v. Cuellar de Osario*, 573 U.S. 41, 45 (2014); *see also* 8 U.S.C. § 1154(a). However, the INA sets out a variety of characteristics which may render an individual otherwise "ineligible to receive" a visa "and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). Among those declared ineligible are certain noncitizens who have been unlawfully present in the United States. *Id.* § 1182(a)(9)(A)-(B).

In practical terms, this means that many spouses, close relatives, and children of U.S. citizens—family members who have come to the United States to visit their loved ones but have overstayed their authorized term of presence in the country—are rendered ineligible to benefit from the visa procedures for noncitizen relatives. Ending their unlawful stay in the states and going abroad, however, could result in even longer periods of family separation as those who are unlawfully present for more than 180 days risk being barred from re-entry into the United States for three to ten years. *See id.* § 1182(a)(9)(B)(i).

In recognition of this hardship and to promote family unity, the INA authorizes the Attorney General to grant discretionary waivers to qualifying relatives to exempt them

---

[2]Both the plaintiffs' complaint (Filing No. 1, pp. 6-7) and the defendants' motion (Filing No. 23, pp. 5-13) well-summarize the complex statutory and administrative mechanisms underlying the immigration procedures at issue in this matter, as well as the defendants' duties in relation to those procedures. The Court only briefly summarizes those procedures here.

from unlawful-presence ineligibility. *See id.* § 1182(a)(9)(B)(v). An applicant can request such a waiver from the USCIS through an application for an "I-601A Provisional Unlawful Presence Waiver" ("I-601A application").[3] *See* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536-01 (Jan. 3, 2013). The USCIS may grant an I-601A application "in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to [their] satisfaction . . . that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C. § 1182(a)(9)(B)(v).

The visa process for an I-601A applicant is thereby halted until the USCIS adjudicates their waiver application. 9 *Foreign Affairs Manual* 302.11-3(D)(1)(b)(3)(C). Only after the relative's I-601A application has been approved can they pursue their visa petition further by applying for a visa at the appropriate consular office abroad. *See* 8 U.S.C. § 1202(h) (requiring every nonimmigrant visa applicant to attend an in-person interview with a consular official). By statute, this intermediate adjudication phase was intended to last for a relatively short period of time as the INA provides that "immigration benefit application[s]" like I-601A applications "should be completed not later than 180 days after the initial filing of the application." *Id.* § 1571.

While this prompt adjudication was intended to eliminate the backlog of immigration relief applications and "maintain the elimination of the backlog in future years," *id.* § 1571(a)(1), it is safe to say this goal has not been realized. Currently, the

---

[3]Sometimes called "stateside waivers," *see* Maria Baldini-Potermin, *Eligibility for waiver of three-and 10-year unlawful presence bars*, Immigr. Trial Handbook § 6:82 (2022), the process to obtain a waiver for unlawful presence was reformed in 2013 to allow applicants to submit an I-601A application from within the states to reduce "the time that U.S. citizens are separated from their immediate relatives, thus reducing the financial and emotional hardship for these families," 78 Fed. Reg. 536-01, 539. Before this change, applicants were required to depart the United States prior to submitting a request for an unlawful presence waiver.

USCIS's website states the average processing time for 80% of I-601A cases adjudicated within the last six months is forty-four months. *Check Case Processing Times*, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times/ (last visited Oct. 2, 2023). This is a 977% increase from the median processing time of I-601A forms in the 2018 fiscal year, which was four-and-a-half months. *See Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year*, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times/historic-pt (last visited Oct. 2, 2023).

Rosales and Beltran have, unfortunately, found themselves personally affected by this delay. The couple currently resides in Wichita, Kansas. On August 2, 2019, Rosales filed an I-130 form with the USCIS to petition for lawful permanent residency status for her husband. On August 12, 2020, Beltran filed an I-601A application with the USCIS seeking an unlawful-presence waiver in order to have his visa application processed. At the time the plaintiffs filed this complaint, Beltran's I-601A application had been pending for approximately thirty-two months with the USCIS's Nebraska Service Center; that delay has now exceeded three years. Because of the process outlined above, Beltran is also unable to schedule a visa interview at the U.S. Consulate in Ciudad Juarez, Mexico, until the adjudication of his I-601A application is completed.

Rosales and Beltran, like a growing number of plaintiffs in similar cases before this Court, seek relief from this delayed process. *See Granados v. United States*, 2023 WL 5831515, at *2 (D. Colo. Aug. 23, 2023) (citing a document submitted by the U.S. Department of Justice demonstrating "approximately 150 similar cases" were pending in district courts nationwide). The plaintiffs filed this action on April 13, 2023, "to compel unreasonably delayed government action on the processing of [the] I-601A Application for Provisional Unlawful Presence Waiver" they filed as well as the "scheduling and adjudication of [Beltran's] DS-260 immigrant visa interview." Their complaint alleges the defendants' delayed action in processing their immigration applications violates the

Administrative Procedure Act ("APA").  *See* 5 U.S.C. § 551(b).  Consequently, they argue, they are entitled to an order compelling the agency action they allege has been "unlawfully withheld or unreasonably delayed," *see id.* § 555(b), and to mandamus relief, *see* 28 U.S.C. § 1361.

On June 15, 2023, the defendants filed a motion to dismiss the plaintiffs' complaint for lack of subject-matter jurisdiction and for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(1), (b)(6).  They argue the case must be dismissed under Rule 12(b)(1) because (1) the Court is barred from reviewing the plaintiffs' claims against USCIS due to the jurisdiction-stripping provision in 8 U.S.C. § 1182(a)(9)(B)(v), and (2) the plaintiffs' claims against the State Department are not ripe.  Additionally, the defendants argue the case should be dismissed pursuant to Rule 12(b)(6) because the alleged delays are reasonable under the factors set out in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), and mandamus relief is not a proper remedy for the plaintiffs' claims.

## II.   DISCUSSION
### A.   Standards of Review
#### 1.   Rule 12(b)(1)

In ruling on the defendants' motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court must determine whether they make a "facial" or "factual" attack.  *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018).  A facial attack is one in which the "defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction."  *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).  In analyzing a facial attack, the Court must restrict "itself to the face of the pleadings" and grant "the non-moving party . . . the same protections" given in a Rule 12(b)(6) motion.  *Id*. (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  Thus, the Court accepts as true all of the complaint's factual allegations and construes all reasonable inferences in the plaintiffs' favor.  *Carlsen v. GameStop, Inc*. 833 F.3d 903, 908 (8th Cir. 2016).

A factual attack, on the other hand, arises where the jurisdictional issue raised by a Rule 12(b)(1) motion is "'bound up' with the merits of the case," *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (quoting *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018)), because the defendant has "challenge[d] the veracity of the facts underpinning subject matter jurisdiction," *Davis*, 886 F.3d at 679 (quoting *Kerns*, 585 F.3d at 193). The Court is not bound by Rule 12(b)(6) standards of review in its analysis of a factual attack. *Id.* Instead, it can consider matters outside of the pleadings and need not accept the allegations in the complaint as true. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015).

### 2. Rule 12(b)(6)

The Court's analysis of a complaint under a Rule 12(b)(6) motion for failure to state a claim focuses on the "facial plausibility" of the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must contain a "short and plain statement of the claim showing that" the plaintiffs are entitled to relief, Fed. R. Civ. P. 8(a)(2), as well as "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As it does in reviewing a facial attack on subject-matter jurisdiction, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the nonmoving party's favor. *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023).

### B. Judicial Review under the INA

The central issue of the defendants' motion under Rule 12(b)(1) is whether 8 U.S.C. § 1182(a)(9)(B)(v) bars the Court from reviewing legal challenges to the USCIS's delayed adjudication of I-601A applications. Because this matter does not concern any factual dispute but rather is an issue of statutory interpretation, the defendants' argument to this end is—as they assert—a "facial attack" against the complaint. As such, the Court gives the plaintiffs the benefit of the Rule 12(b)(6) protections. *Carlsen*, 833 F.3d at 908.

Section 1182(a)(9)(B)(v), which gives the Attorney General "sole discretion" to grant waivers for unlawful presence, states that "[n]o court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause." The defendants contend the statute's "plain, unambiguous language . . . makes clear that waivers of inadmissibility for unlawful presence are a fully discretionary process." The USCIS's delay in adjudicating I-601A applications, they assert, is therefore "a decision or action" over which this Court has no power of review. In response (Filing No. 24), the plaintiffs argue the statute was "not designed to preclude judicial review over all agency actions." In their view, the defendants' broad claims "overgeneralize" the provision in a manner unsupported "by a plain reading of the statute" to avoid this Court's oversight.

The Court notes, at the outset, the importance and difficulty of this question of statutory interpretation. "Separation-of-powers concerns" caution against interpreting legislation "to place in executive hands authority to remove cases from the Judiciary's domain." *Kucana v. Holder*, 588 U.S. 233, 237 (2010). Consequently, the Supreme Court has long recognized the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991). Since the Court "assumes that 'Congress legislates with knowledge' of [this] presumption," *Kucana*, 588 U.S. at 251-52 (quoting *McNary*, 498 U.S. at 496), only "clear and convincing evidence of a congressional intent to preclude judicial review entirely" may override it, *Reno v. Cath. Social Servs., Inc.*, 509 U.S. 43, 44 (1993). Such evidence may be found in "'specific language' in a provision or [] 'drawn from the statutory scheme as a whole.'" *Patel v. Garland*, 596 U.S. ___, ___, 142 S. Ct. 1614, 1627 (2022) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)).

The proper application of these well-settled principles is, however, frequently disputed. In particular, whether the various jurisdiction-stripping provisions of the INA

7

bar the courts' review of legal challenges to immigration procedures has been a matter of broader concern for decades. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (concluding the INA did not bar habeas-corpus challenges to post-removal detention on statutory or constitutional grounds); *Kucana*, 588 U.S. at 252-53 (explaining the INA did not bar review of an order denying a motion to reopen removal proceedings); *Patel*, 596 U.S. at ___, 142 S. Ct. at 1622-23 (2022) (deciding the INA barred review of an immigration judge's factual finding made during removal proceedings). Similar issues have been addressed by this Court in contexts related, but not identical, to the present matter. *See Bansal v. U.S. Citizenship and Immigr. Servs.*, Case No. 4:21CV3203, 2021 WL 4553017, at *5, *6 (D. Neb. Oct. 5, 2021) (concluding the INA barred an APA and mandamus action challenging the USCIS's backlog in adjudicating adjustment-of-status applications); *Wali v. U.S. Citizenship and Immigr. Servs.*, Case No. 4:21CV3288, 2021 WL 5041207, at *2 (D. Neb. Oct. 29, 2021) (describing that "there is no consensus within this district as to whether courts have jurisdiction over cases alleging adjudication of an adjustment-of-status application has been unreasonably delayed").

Moreover, the handful of district courts to recently consider the exact question at issue in this case—whether § 1182(a)(9)(B)(v) bars federal courts' review of claims pertaining to delays in adjudicating I-601A forms for unlawful-presence waivers—have resolved the matter to divergent results. Several courts have come to the conclusion urged by the defendants that courts are barred from reviewing challenges to I-601A delays. *See Lovo v. Miller*, Case No. 5:22CV67, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023); *Mercado v. Miller*, Case No. 2:22CV2182, 2023 WL 4406292, at *2, *3 (D. Nev. July 7, 2023); *Echeverri v. U.S. Citizenship and Immigr. Servs.*, Case No. 23CV21711, 2023 WL 5350810, at *3, *4 (S.D. Fla. Aug. 21, 2023); *Vijay v. Garland*, Case No. 2:23CV157, 2023 WL 6064326, at *1, *2 (M.D. Fla. Sept. 18, 2023). In contrast, two courts have decided the statutory text of § 1182(a)(9)(B)(v) is not broad enough to strip the courts of jurisdiction over such claims. *Granados*, 2023 WL

5831515, at *3-*5; *Bamba v. Jaddou*, Case No. 1:23CV357, 2023 WL 5839593, at *2 (E.D. Va. Aug. 18, 2023).

Courts that have found their jurisdiction stripped have looked outside of the text of the INA to dictionary and statutory definitions of the terms "decision" and "action," finding that language broad enough to encapsulate the USCIS's delay in adjudicating I-601A applications. Some have found the APA definition of "agency action"—which includes the "failure to act," *see* 5 U.S.C. § 551(13)—supports an interpretation of § 1182(a)(9)(B)(v) that bars review of inaction or delay, *see Mercado*, 2023 WL 4406292, at *2; *Echeverri*, 2023 WL 5350810, at *4. Courts in this camp have also tethered their reasoning to the Supreme Court's recent decision in *Patel v. Garland*, which found that the term "regarding" had a "broadening effect" in another jurisdiction-stripping provision within the INA. 596 U.S. ___, ___, 142 S. Ct. 1614, 1622; *see also Vijay*, 2023 WL 6064326, at *2; *Lovo*, 2023 WL 3550167, at *3; *Mercado*, 2023 WL 4406292, at *2, *3; *Echeverri*, 2023 WL 5350810, at *4. In the main, these courts have generally concluded that § 1182(a)(9)(B)(v)'s "jurisdiction-stripping provision extends to matters relating to the decision to grant or deny a waiver and bars review of [] unreasonable-delay claims." *Vijay*, 2023 WL 6064326, at *2.

The courts in *Granados* and *Bamba*, on the other hand, have not found the APA's definitions nor *Patel* particularly applicable to the issue. *Patel*, they reason, involved—in contrast—"review of an actual decision by the Government," *Granados*, 2023 WL 5831515, at *5, and was "intended to be narrow" in addressing the distinct matter before the Court, *Bamba*, 2023 WL 5839593, at *3. These courts have concluded the terms "decision or action" do not plainly include the complained-of delay. *Bamba*, 2023 WL 5839593, at *2 (stating the definitions of "decision" and "action" "infer some affirmative action, not inaction or a failure to act"). According to them, the INA cannot—therefore—be clearly interpreted to bar review of I-601A delay cases.

The Court does not find either of these approaches entirely satisfying. First, many of the courts that have granted dismissal on Rule 12(b)(1) grounds have conducted only a cursory analysis of these complex issues. For example, few attempt to explain why *Patel* guides as broad of a reading of § 1182(a)(9)(B)(v) as is reached in many of these cases. *Patel* concerned the reviewability of a very different challenge to an immigration proceeding in a different—albeit similar—statutory context. 596 U.S. at ___, 142 S. Ct. at 1621-26 (interpreting 8 U.S.C. § 1252(a)(2)(B)(i)'s language preventing judicial review of "any judgment regarding the granting of relief" under § 1255). In finding the Court was stripped of jurisdiction to review a discrete factual finding made during removal proceedings, the Supreme Court made clear the matter of whether "USCIS decisions [were] wholly insulated from judicial review" would not be addressed. *Id.* at 1626. Additionally, the mere conclusion that the word "regarding" has a broadening effect in one jurisdiction-stripping provision in the INA cannot alone support the contention that § 1182(a)(9)(B)(v) "cover[s] *any* matters relating to the subject of waiver." *Mercado*, 2023 WL 4406292, at *3. This broad interpretation of the statutory language seems to be a stretch, and not one that needs to be made here.

Moreover, the defendants' blanket assertion that "the plain, unambiguous language of the statute makes clear that waivers of inadmissibility for unlawful presence are a *fully discretionary* process" is wholly unpersuasive on this record. None of the cases the defendants cite in support of this view say nearly that much. *See*, *e.g.*, *Texas v. United States*, 809 F.3d 134, 164 & n.88 (5th Cir. 2015) (deciding § 1252(g) did not bar review of the implementation of the Deferred Action for Parents of Americans program and simply citing to, but not interpreting, other jurisdiction-stripping provisions of the INA including § 1182(a)(9)(B)(v)); *Garcia-Ortiz*, 20 F.4th at 1217 (stating the "Attorney General has discretion to waive inadmissibility only in the case of an immigrant who is the spouse, son, or daughter of a United States citizen" but not addressing the jurisdiction-stripping provision of the statute). Additionally, the Court sees a "difference between the [USCIS's] discretion over *how* to resolve an application and the [USCIS's]

10

discretion over *whether* it resolves an application." *Khan v. Johnson*, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014) (quoting *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007)). Because the issue presented in the case at bar pertains to *how* the USCIS prioritizes and adjudicates I-601A applications over time—not *whether* USCIS can fully withhold adjudication of waiver applications—the Court finds the sweeping conclusion urged by the government is similarly unnecessary.

At the same time, the Court is also not fully persuaded by some of the reasoning in *Granados* and *Bamba*. The Court does not agree that the present dispute over the USCIS delays concerns judicial review of only "inaction or a failure to act." *Bamba*, 2023 WL 5839593, at *2. To the contrary, judicial review of the complained-of delays necessarily would require meddling into the "affirmative action[s]," *id.*, of the USCIS that have resulted in the delayed adjudication of Beltran's waiver application. "Action" is defined as "the process of doing something; conduct or behavior," while a "decision" is a "determination [made] after consideration of the facts and the law." Black's Law Dictionary (11th ed. 2019). As the defendants describe, the USCIS historically "processes Form I-601A applications in the order it receives them." This order of priority, as well as USCIS's broader decision to momentarily allocate its resources to particular applications instead of others, are "decision[s] or action[s] . . . regarding" I-601A waivers that—by statute—are insulated from judicial review. 8 U.S.C. § 1182(a)(9)(B)(v).

Though not directly binding on this issue, long-held principles about the proper scope of judicial review of agency action also are consistent with this interpretation. While judicial oversight—including enforcement of the APA—provides important protections for individuals adversely impacted by agency action, courts have historically recognized that an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (concluding the Food and Drug Administration's decision not to take

requested enforcement actions was unreviewable under the APA). Because it has been "repeated time and again [that] an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities," it seems further reasonable to infer that Congress intended to preclude such decisions from review under the INA. *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007).

In sum, as this Court has previously stated in the context of delayed adjudication of adjustment-of-status applications, no one in these delay cases "is alleging that USCIS isn't doing anything. Rather, USCIS just isn't . . . prioritizing its work in the way the plaintiff would prefer. And the decision to do one thing, at a particular pace, instead of another thing is a discretionary decision insulated from judicial review—not 'inaction' with respect to the lower-priority task." *Chalamalasetty v. Jaddou*, Case No. 4:22CV3182, 2023 WL 6387976, at *3 (D. Neb. Sept 29, 2023). As a result, the issues presented by the plaintiffs' action for APA and mandamus relief with regard to Beltran's I-601A application are barred from our review by the jurisdiction-stripping provision in § 1182(a)(9)(B)(v).

C. **Ripeness**

While § 1182(a)(9)(B)(v) is dispositive of the plaintiffs' I-601A delay claim, the defendants argue that the plaintiffs' remaining claim—which relates to the State Department's delay in scheduling Beltran's consular interview—should also be dismissed pursuant to Rule 12(b)(1) for ripeness concerns. The defendants state the plaintiffs have no pending action with the State Department since the USCIS has yet to adjudicate Beltran's I-601A application, and any claim the Department will later delay his consular interview is "purely speculative" and "assumes several contingencies." While plaintiffs concede their case is only moved to the Department "once USCIS approves" their pending applications, they assert their claims are nonetheless ripe because the Department "became involved with Plaintiff's case on April 1, 2020."

The Court agrees with the defendants that it has no occasion to review the plaintiffs' claims about any delayed scheduling of Beltran's visa interview. Ripeness doctrine "originates from the [] Article III limitation" of federal-court jurisdiction to matters presenting actual cases or controversies. *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997-98 (8th Cir. 2022). For their claims to be ripe, the plaintiffs must be able to demonstrate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 998 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)). "A case is fit for judicial decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Id*. Although ripeness does not require the plaintiffs to wait for a threatened injury to be inflicted upon them, the challenged "injury must be certainly impending." *Paraquad, Inc. v. St. Louis. Hous. Auth.*, 259 F.3d 956, 958-59 (8th Cir. 2001) (internal quotations omitted).

The plaintiffs are not threatened by any such certainly impending injury here. Both the plaintiffs and defendants agree that USCIS needs to approve Beltran's "I-601A waiver application before he can be interviewed on his DS-260 immigrant visa application." Since the State Department has no ability to even consider scheduling Beltran's interview at this time, the delay the plaintiffs' have suffered to this point has not been caused by the Department. Because any future delay by the Department is contingent on possibilities not apparent on this record, there is no active case or controversy with regard to the scheduling of Beltran's visa interview, and any consideration of this issue would be premature.

### III.   CONCLUSION

The Court does not come to its conclusion lightly. Citizenship and lawful residency in the United States are privileges too many take for granted. The Court is keenly aware of and sensitive to the impact the USCIS's delays have on the employment opportunities, family unification, and emotional and financial prosperity of United States citizens and their loved ones. However, "policy concerns cannot trump the [Court's]

interpretation of the statutory text" of § 1182(a)(9)(B)(v). *Patel*, 596 U.S. at ___, 142 S. Ct. at 1627. The Court, having found it presently has no part to play in moving the plaintiffs' application along, must dismiss their complaint for lack of subject-matter jurisdiction.[4]

IT IS ORDERED:

1. Defendants Loren Miller, Alejandro Mayorkas, Ur Mendoza Jaddou, Antony Blinken, Phillip Slattery, and Richard Visek's Motion to Dismiss (Filing No. 21) under Federal Rule of Civil Procedure 12(b)(1) is granted.
2. Plaintiffs Aaron Carlos Beltran and Mayra Mauricio Rosales's complaint (Filing No. 1) is dismissed without prejudice.
3. A separate judgment will issue.

Dated this 20th day of October 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

[4]The Court's first Memorandum & Order in this matter (Filing No. 26) has been amended to reflect that the plaintiffs' complaint is dismissed *without* prejudice. *See Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.").